34 C.C.P.A.(Patents)

## Application of KURTZ et al.
### Patent Appeal No. 5201.

Court of Customs and Patent Appeals.

Dec. 9, 1946.

Paul Kolisch, of New York City, for appellants.

W. W. Cochran, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 8, 9, and 10 in appellants' application for a patent for an invention relating to electric gaseous discharge lamps, and particularly to thermostatic switches therefor. Two claims (Nos. 3 and 4) in appellants' application were allowed by the Primary Examiner. Claim 8, except as hereinafter stated, is sufficiently illustrative of the appealed claims. It reads:

"8. In a thermostatic switch, a base, connecting pins projecting from one side thereof, conductors connected with said pins projecting from the other side thereof, two bimetallic strips arranged to face one another with a space between them, and having one of their ends connected with and mounted on two of said conductors, the other ends of said strips having contacts and being free to move towards and away from one another, and a heating coil arranged in said space and connected to one of the last mentioned conductors and another conductor, one sector of the circumference of said coil being arranged to heat one of said strips and an opposite sector of said coil being arranged to heat the other of said strips."

It will be observed that claim 8 calls for, among other things, two bimetallic strips, whereas claims 9 and 10 call for a plurality of pairs of bimetallic strips.

In addition to the elements called for by claims 8 and 9, claim 10 calls for a base having five connecting pins on one side thereof, and five conductors connected with the pins and projecting from the other side of the base for mounting the switch elements.

The references are:

Campbell, 2,266,619, December 16, 1941,
Abbott, 2,268,522, December 30, 1941,
Peters, 2,294,203, August 25, 1942,
Peters, 2,313,575, March 9, 1943.

The claims on appeal call for a thermostatic switch having a base, connecting pins projecting from one side of the base, conductors connected to the pins and projecting from the other side of the base, and a pair of bimetallic strips, as called for in appealed claim 8, or a plurality of pairs of bimetallic strips, as called for in appealed claims 9 and 10, the strips of each pair being arranged so as to face one another. Two of the ends of a pair of strips are connected with and mounted on two conductors, the other, or free ends, are adapted to move into and out of contact. A heating element is positioned in the space between the strips of each pair of bimetallic strips. The bimetallic strips are heated simultaneously by opposite sectors of the heating element and when so heated, their free ends, which have been in contact, move away from one another, thus breaking the electrical contact. When heat ceases to be applied, the free ends of the bimetallic strips become cooled and again move into electrical contact.

It appears from the record that the thermostatic switch defined by the appealed claims is designed to be used for lighting one or more pairs of lamps.

As we understand appellants' disclosure, the lamps of each pair, in normal operation, are connected in series in the secondary circuit of a transformer. The switch which forms the subject matter of this appeal is so arranged in the circuit that, when the bimetallic elements are cold, they close a circuit through the first lamp of a pair and short circuit the second lamp, thus allowing the full voltage to be applied to the first lamp. The heating coil associated with the bimetallic elements is also connected in series with the lamps and when current is passing through the lamps, the heating coil is heated sufficiently to cause the bimetallic elements to separate. Such separation opens the short circuit previously referred to and causes the current to flow through the second lamp as well as the first. If the second lamp fails to light, however, the separation of' the bimetallic elements will result in a complete breaking of the circuit through both lamps, thus allowing the heating coil to cool until the bimetallic elements are again brought together. When this happens, the

starting circuit is again closed, and the cycle of operation is repeated until both lamps are lighted.

The patent to Campbell relates to gaseous electric discharge devices and particularly to a circuit arrangement for starting and operating such devices. The patentee employs two pairs of bimetallic elements. The elements of each pair are fixed at one end to a base and, when cold make electrical contact at their free ends. An electrical heating coil is provided which when heated causes one of the bimetallic elements of each pair to move away from and out of electrical contact with the other. The heating coil is not between the elements of each pair, but is adjacent the outer side of one element of each pair, and heats that element only.

The operation of the Campbell device does not depend upon any movement of that bimetallic element which is not adjacent the heating coil, and it is not stated by the patentee whether that element, if heated, would move toward or away from the other element. The direction of the movement of the bimetallic element which is not adjacent the heating coil would depend upon the specific arrangement of the two metals thereof, which arrangement is not disclosed. Accordingly, we are unable to hold that if the heating coil were placed between the bimetallic elements of each pair, it, when heated, would cause the opening of the contacts, as held by the tribunals of the Patent Office.

The patent to Peters, No. 2,294,203, relates to starting apparatus for electric discharge lamps, and discloses a starting switch which comprises a single bimetallic strip of U-shape. The strip is secured to a base at one end and carries on its free end an electrical contact which, when the strip is heated, moves into engagement with a fixed "stud" mounted on the base. The bimetallic strip is surrounded by an envelope and is *primarily* heated by a so-called "glow discharge" of electric current between the strip and other metal members within the envelope. However, the patentee provides an electric heating coil, merely as an *auxiliary source of heat*, which passes through the U-shaped strip, and thus radiates heat to two opposite por-

tions of the bimetallic strip. The patentee does not disclose two separate bimetallic strips heated by a single heating coil.

With reference to the heating coil, the patentee states:

"* * * The purpose of this heater being to supply a small amount of additional heat to the bimetallic strip. *The main heating of the strip is caused by a glow discharge between the strip * * * and some or all of the other elements within the envelope * * *.*" (Italics ours.)

The patent to Peters, No. 2,313,575, relates to electric discharge lamps and discloses a starting switch which comprises three bimetallic strips mounted in a row on a base, one end of each strip being fixed to the base. The free end of the middle strip carries electrical contacts on its opposite sides and these contacts are adapted to engage alternately with corresponding contacts on the free ends of the outer strips. A heating coil is provided adjacent one side of the middle strip, and that strip, when heated by the coil, moves out of engagement with one of the outer strips and into engagement with the other. Although the heating coil is between the middle strip and one of the outer strips, it is too remote from the outer strip to have any appreciable effect upon it.

The patentee states:

"* * * The several bimetallic strips are arranged *to bend in the same direction* with an increase in the temperature of the ambient whereby compensation is made for such temperature changes." (Italics not quoted.)

It is evident from the disclosure in the Peters' patent now under consideration that if any appreciable amount of heat from the heating coil reached the outer bimetallic strips, there would be no relative movement between the middle and outer strips and, in order to produce such relative movement it is necessary that a much greater amount of heat be supplied to the middle bimetallic strip. Accordingly, the teaching of the Peters' patent is directly contrary to the arrangement and operation of the thermostatic switch defined by the appealed claims.

The reference patent to Abbott was cited to meet only that portion of claim 10 which calls for a base having five connecting pins on one side thereof, and five conductors connected with the pins. The patent discloses four contact strips across the conductors. Furthermore, as stated by the Primary Examiner, the base of the Campbell switch has at least five contact prongs and the patent to Peters, 2,313,575, has a base having five supporting and connecting prongs.

We are in agreement with the holdings of the tribunals of the Patent Office that that portion of claim 10 which calls for a base having five connecting pins on one side and five conductors connected with the pins on the other side, does not add anything of a patentable nature to the other elements called for by that claim.

In rejecting the appealed claims, the Board of Appeals expressed the view that "* * * it would involve merely a matter of degree of spacing and heating to place the heater of the Campbell patent between the bimetallic elements as is done by applicants in view" of the patents to Peters and Abbott.

It is evident from what has been said that appellants' thermostatic switch arrangement is entirely different from those disclosed in the prior art and we find no suggestion in the references, considered singly or in combination, of the thermostatic switch defined by the appealed claims. We are unable, therefore, to agree with the view expressed by the Board of Appeals that appellants' structure is "merely a matter of degree of spacing."

Furthermore, it is obvious that the contact of the bimetallic elements in appellants' device may be broken by a considerably less degree of heat than is required in the prior art disclosures, and as a consequence those elements may be more quickly cooled, thus effecting a more rapid opening and closing of the contacts. It is evident therefore, that by the arrangement of appellants' thermostatic switch, the lamps may be more quickly and efficiently operated than those in the prior art cited.

We have given careful consideration to the views expressed by the tribunals of the Patent Office but are of opinion that the claims on appeal define patentable subject

matter over the references of record. Accordingly, the decision of the Board of Appeals is reversed.

Reversed.